**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| THOMAS MARSHALL BYRD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:11CR203-1 |
| | ) | 1:15CV1028 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for recommended rulings on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") (Docket Entry 85) and his "Motion to Preserve Rights under Johnson v. United States, [576 U.S. ___,] 135 S. Ct. 2551 [(2015), and] also Welch v. United States, ___ U.S. ___, 136 S. Ct. 1257 (2016)]" ("Johnson Motion") (Docket Entry 98).[1] For the reasons that follow, the Court should deny relief.

BACKGROUND

The Court (per United States District Judge William L. Osteen, Jr.) entered a Judgment sentencing Petitioner to, inter alia, consecutive prison terms of 262 and 60 months, upon his guilty plea to Object One of Count One and to Count Five of his Indictment, which charged him with conspiracy to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) and

---

[1] Parenthetical citations refer to Petitioner's above-captioned criminal case.

possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), respectively. (Docket Entry 41; see also Docket Entry 1 at 1, 3 (indicting Petitioner in Object One of Count One for conspiring to distribute 50 grams or more of cocaine base, "[f]rom in or about 2009, continuing up to and including April 1, 2010," and in Count Five for, "[o]n or about April 1, 2010, . . . in furtherance of a drug trafficking crime . . . possess[ing] a firearm, that is, a Taurus .38 caliber revolver").) After Petitioner appealed (see Docket Entry 42) and the United States Court of Appeals for the Fourth Circuit remanded (see Docket Entry 55), then-Chief Judge Osteen conducted a new sentencing hearing (see Docket Entry 72) and entered an Amended Judgment imposing consecutive prison terms of 180 months and 60 months for the drug conspiracy and firearm offenses (Docket Entry 65). Petitioner again appealed, but the Fourth Circuit affirmed. See United States v. Byrd, 583 F. App'x 144 (4th Cir. 2014), cert. denied, ___ U.S. ___, 135 S. Ct. 1011 (2015). Petitioner thereafter timely filed his Section 2255 Motion, which presents three ineffective assistance of counsel claims. (See Docket Entry 85, ¶ 12; see also Docket Entry 96 (Memorandum).) The United States responded (Docket Entry 99) and Petitioner replied (Docket Entry 103).² He also filed his Johnson Motion. (Docket Entry 98.)

---

² Petitioner did not swear to (or certify under penalty of perjury) the contents of his Memorandum or his Reply. (See Docket (continued...)

2

DISCUSSION

Petitioner possessed a federal constitutional right to effective assistance of counsel in his criminal case in this Court. See U.S. Const. amend. VI; McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). To establish an ineffective assistance claim, Petitioner must show that his counsel's performance fell below a reasonable standard for defense attorneys and that prejudice resulted. See Strickland v. Washington, 466 U.S. 668, 687–94 (1984). "Surmounting Strickland's high bar is never an easy task. . . . [T]he standard for judging counsel's representation is a most deferential one." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted); see also United States v. Galloway, 749 F.3d 238, 241 (4th Cir. 2014) ("To meet th[e prejudice] element of an ineffective assistance claim, [the defendant] would have to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different and that the

---

²(...continued)
Entry 96 at 11; Docket Entry 103 at 9.) As a result, any factual assertions therein do not qualify as evidence. See, e.g., United States v. Rhodes, No. 3:08CR82, 2013 WL 150335, at *3 (E.D. Va. Jan. 14, 2013) (unpublished) ("[U]nsworn allegations cannot constitute a basis for habeas relief. . . . Facts alluded to in an unsworn memorandum will not suffice."), aff'd in part and appeal dismissed in part, 531 F. App'x 279 (4th Cir. 2013); Wright v. United States, Nos. 3:10CV174, 3:04CR3, 2011 WL 4852470, at *17 n.7 (S.D. Ohio May 20, 2011) (unpublished) ("[T]he unsworn allegations of [a] reply are not an acceptable form of evidence . . . ."), recommendation adopted, 2011 WL 4852495 (S.D. Ohio Oct. 13, 2011) (unpublished).

result of the proceeding was fundamentally unfair or unreliable." (internal quotation marks omitted)).

## Ground One

Ground One of the Section 2255 Motion asserts that Petitioner received ineffective assistance due to his counsel's "[f]ailure to file a motion to suppress in [this] Court following a viable submission in states [sic] court." (Docket Entry 85, ¶ 12(Ground One); see also Docket Entry 96 at 3 (describing Ground One as alleging that "[c]ounsel was negligent and ineffective when she failed to file a Motion to Suppress in Federal Court after filing the same Motion to Suppress in State Court challenging Fourth Amendment grounds even though [Petitioner] requested her to file the same Motion to Suppress").) As "[s]upporting facts" for that claim, Petitioner averred:

> Following a search by police officers the State of North Carolina filed a State Criminal charge. [Petitioner] hired [counsel and], after investigating the evidence[,] counsel filed a Motion to Suppress. The Fedral [sic] Government indicted the case while [Petitioner] was waiting on [that] Motion to be heard. [Petitioner] requested counsel on different occassion [sic] including plea negotiations to refile the same motion, challenging the same US Constitution and [sic] illegally seized evidence, [but] instead counsel advised [Petitioner] to plead guilty, even though the Elkins-rule bans illegally seized evidence by by [sic] State officers to be prosecuted in Federal Court over timely objection. Had [Petitioner] known he could have still challenged the 4th Amendment Violation, he would not have agreed to the term [sic] of [the P]lea [A]greement.

(Docket Entry 85, ¶ 12(Ground One)(a) (internal citation omitted) (citing id., Ex. A).)

4

The Court should deny relief on Ground One for at least two reasons. First, where (as here) "a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea . . . ." Tollett v. Henderson, 411 U.S. 258, 267-68 (1973). As explained in connection with Ground Two, the record forecloses a finding that Petitioner pleaded guilty involuntarily or unintelligently. As a result, "the argument that [his] attorney was ineffective in failing to file a motion to suppress [i]s precluded by [his] guilty plea under the rule in *Tollett*." Shabazz v. United States, Civ. No. 03-10277, Crim. No. 00-20068, at *1 (E.D. Mich. June 25, 2007) (unpublished) (internal citation omitted); see also Alonso v. United States, No. 11CV998, 2013 WL 1759938, at *2 (E.D.N.Y. Apr. 24, 2013) (unpublished) (rejecting "argu[ment] that attorney [] provided ineffective assistance during the plea stage . . . [because he] should have . . . filed a suppression motion," as that claim "relate[d] to the legal assistance provided by counsel prior to [the] petitioner's guilty plea . . . [and] a defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea" (internal brackets and quotation marks

5

omitted)); United States v. Rosas, Nos. CIV 11-474, CR 02-1016 & 08-123, 2012 WL 786248, at *9 (D. Ariz. Mar. 9, 2012) (unpublished) ("[The petitioner] asserts that he was denied the effective assistance of counsel where counsel failed to . . . move to suppress evidence . . . . [Such] claims of ineffective assistance of counsel relating to pre-plea matters that are unrelated to the plea itself do not survive a guilty plea under *Tollett*.").

Second, Petitioner has not established that (1) his counsel acted unprofessionally by electing not to re-file in this Court the suppression motion filed in state court or (2) that prejudice resulted from that election. In that regard, as the United States has observed, "the drug and firearm evidence [underlying Petitioner's guilty plea] was seized during the execution of a search warrant" (Docket Entry 99 at 11). Specifically, the Factual Basis supporting his guilty plea states:

> On March 31, 2010, [a law enforcement officer] received information from a confidential source that "Pooh" would be delivering a quantity of cocaine hydrochloride to the 1800 block of Kentucky Avenue [in Winston-Salem, North Carolina]. Officers conducted a traffic stop of a gray Volkswagen station wagon driven by James Stowe. [Petitioner's co-defendant] Lemonn Orlando Washington, also known as "Pooh," was located in the passenger seat . . . . Officers retrieved [a] white powdery substance from Washington's pants pocket which later field tested positive for the presence of cocaine. . . .
>
> Mr. Stowe was interviewed and he advised officers that Washington had called him; that he had picked [Washington] up in front of 945 East 2nd Street[ in Winston-Salem]; and that he had then taken [Washington] to Kentucky Avenue. The confidential source had already told officers that "Pooh" was known to stay at 945 East

6

2nd Street, and during surveillance of this location, officers had observed a burgundy and black Dodge Magnum parked in front of that location. During the traffic stop of the Volkswagen, officers observed the same Dodge Magnum drive by their location and then return to 945 East 2nd Street. Officers approached the driver of this vehicle, who was identified as [Petitioner].

[Petitioner] was advised that officers were conducting a narcotics investigation. During a frisk of [Petitioner], a bag of marijuana was located in his pocket. As additional officers approached that apartment, [Petitioner] lunged for his cellular phone [and] then began yelling at an occupant that was looking out of the window of 945 East 2nd Street, Ap[artmen]t B. The occupant of the apartment was identified as Jonay Howard. Based on officers [sic] interaction with Ms. Howard and the totality of the facts of the investigation, officers decided to secure the apartment in order to obtain a search warrant. <u>After obtaining a search warrant for the apartment, officers located a quantity of cocaine hydrochloride, cocaine base, two firearms, drug paraphernalia and numerous items that had cocaine residue on them which were used in the production of crack cocaine. One of the firearms, a Taurus .38 caliber revolver . . . was found in a kitchen drawer.</u> The other firearm, a two-shot Panzer .22 caliber Derringer, was located in a bedroom. According to the North Carolina State Bureau of Investigation laboratory report, <u>the substance seized from the residence was 252.0 grams (net weight) of cocaine hydrochloride and 137.6 grams (net weight) of cocaine base.</u>

. . . Ms. Howard advised that she lived in the apartment by herself but that [Petitioner] (her cousin) had been to her apartment that day. Regarding the cocaine that was located within her residence, she advised that it was not hers. . . . Ms. Howard advised that she had a 2-shot Derringer . . . in the bedroom. She advised that there should not be any other firearms in the residence. . . . [W]hen asked to describe the second gun, she could not. She claimed that the second gun was not hers but she would take it (meaning the charge).

In a subsequent statement, Ms. Howard admitted that [Petitioner] had paid the rent for Ms. Howard's previous apartment in return for the use of the apartment to cook cocaine into crack cocaine. <u>She stated that the .38</u>

7

> revolver found in the kitchen had been brought to her previous residence by [Petitioner]. Ms. Howard admitted that [Petitioner] had a key to her residence at 945 East 2nd Street, Apartment B.
>
> According to Ms. Howard, Washington and [Petitioner] worked together in the drug business and they had brought nine (9) ounce quantities of powder cocaine to her previous residence . . . on several occasions in 2009 to cook into crack cocaine.

(Docket Entry 32 at 1-4 (emphasis added); see also Docket Entry 53 at 22 (documenting this exchange during Petitioner's plea hearing: "THE COURT: [Petitioner], . . . have you reviewed the [F]actual [B]asis? [Petitioner]: Yes. THE COURT: And do you generally agree with those facts? [Petitioner]: Yes.").)

The suppression motion that Petitioner's counsel filed in state court does not set forth any basis that would have permitted suppression of the drug and firearm evidence seized from Apartment B at 945 East 2nd Street (which seizure, as acknowledged by the suppression motion, occurred "pursuant to [a] warrant" (Docket Entry 85, Ex. A)). (See id.) Indeed, that suppression motion does not even allege in conclusory terms that the warrant at issue lacked probable cause or suffered from any other defect. (See id.)[3] Because the suppression motion filed in state court could

---

[3] The suppression motion filed in state court focused on the frisk that resulted in the seizure of marijuana from Petitioner's person (which, in turn, resulted in his detention). (See Docket Entry 85, Ex. A (asserting that Petitioner "was stopped without reasonable articulable suspicion, searched without probable cause, and arrested without probable cause").) The facts recounted in that suppression motion do not appear to support the view that
(continued...)

8

> revolver found in the kitchen had been brought to her previous residence by [Petitioner]. Ms. Howard admitted that [Petitioner] had a key to her residence at 945 East 2nd Street, Apartment B.
>
> According to Ms. Howard, Washington and [Petitioner] worked together in the drug business and they had brought nine (9) ounce quantities of powder cocaine to her previous residence . . . on several occasions in 2009 to cook into crack cocaine.

(Docket Entry 32 at 1-4 (emphasis added); see also Docket Entry 53 at 22 (documenting this exchange during Petitioner's plea hearing: "THE COURT: [Petitioner], . . . have you reviewed the [F]actual [B]asis? [Petitioner]: Yes. THE COURT: And do you generally agree with those facts? [Petitioner]: Yes.").)

The suppression motion that Petitioner's counsel filed in state court does not set forth any basis that would have permitted suppression of the drug and firearm evidence seized from Apartment B at 945 East 2nd Street (which seizure, as acknowledged by the suppression motion, occurred "pursuant to [a] warrant" (Docket Entry 85, Ex. A)). (See id.) Indeed, that suppression motion does not even allege in conclusory terms that the warrant at issue lacked probable cause or suffered from any other defect. (See id.)[3] Because the suppression motion filed in state court could

---

[3] The suppression motion filed in state court focused on the frisk that resulted in the seizure of marijuana from Petitioner's person (which, in turn, resulted in his detention). (See Docket Entry 85, Ex. A (asserting that Petitioner "was stopped without reasonable articulable suspicion, searched without probable cause, and arrested without probable cause").) The facts recounted in that suppression motion do not appear to support the view that
(continued...)

8

not have resulted in the suppression in this Court of the evidence that supported Petitioner's convictions, he cannot show that, by opting against filing that suppression motion in this Court, his counsel rendered ineffective assistance. See Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000) ("[C]ounsel [i]s not constitutionally ineffective in failing to [do something if] . . . it would have been futile for counsel to have done so . . . .").

Additionally, Petitioner did not attach (or incorporate) the pertinent search warrant materials. (See Docket Entries 85, 96, 103.) In other words, he "did not include [the] full [search warrant application], or even complete excerpts . . . . It is [therefore] impossible to determine what, if any, action [his] counsel . . . should have taken . . . because there is no relevant [documentation] supporting [Petitioner's] assertions." United

---

³(...continued)
officers lacked reasonable suspicion to frisk Petitioner (or that they unlawfully detained him upon seizing marijuana from his person), but, even if the suppression motion raised a colorable question about those matters, nothing therein suggests that the search warrant application for Apartment B relied, for a showing of probable cause, on that marijuana seizure or Petitioner's resultant detention. (See id.) Similarly, although the suppression motion refers to officers "'lock[ing] down the apartment' and conduct[ing] a 'protective sweep' of the apartment while awaiting a search warrant," as well as an officer "s[eeing] white powder in the kitchen during this 'lock down'" (id.), the suppression motion does not allege that the search warrant application included any information regarding anything officers learned as a result of any protective sweep or lock down (see id.). Further, even if any information gleaned during a protective sweep or lock down did form a part of the search warrant application, the suppression motion does not establish a lack of exigent circumstances for such actions or a lack of probable cause absent such information. (See id.)

States v. Fortner, 117 F. App'x 244, 246 (4th Cir. 2004); see also United States v. Basham, 789 F.3d 358, 375 (4th Cir. 2015) ("[T]o succeed on his ineffective assistance claims, [the petitioner] is not entitled to satisfy the prejudice requirement through rank speculation . . . ." (internal quotation marks omitted)).

For the foregoing reasons, Ground One fails as a matter of law.

## Ground Two

According to Ground Two of Petitioner's Section 2255 Motion, he was "[d]enied [e]ffective [a]ssistance at [the p]lea [n]egotiation stage when counsel misadvised [him] about being a Career [O]ffender." (Docket Entry 85, ¶ 12(Ground Two); see also Docket Entry 96 at 6 (indicating that Ground Two alleges "[c]ounsel rendered Ineffective Assistance of Counsel during plea negotiations and misadvised [Petitioner] of being a Career Offender").) Petitioner offered these "[s]upporting facts" for that claim:

> During [p]lea [n]egotiation counsel told [Petitioner] that she researched his criminal history and [he] <u>was not a career offender</u>, and advised [him] that he <u>would receive a Guideline sentence around his [m]andatory [m]inimum</u> and[,] <u>if [he] did not plead guilty, the Government would use his prior convictions to enhance his [m]andatory [m]inimum to 20 years</u>. Had [Petitioner] known he was going to get 20 years, whether he went to trial or plead[ed] guilty, [he] would not have agreed to the terms of the [P]lea [A]greement, and would have insisted on going to trial.

(Docket Entry 85, ¶ 12(Ground Two)(a) (emphasis added).)

10

The express terms of Petitioner's Plea Agreement and his sworn statements at his plea hearing defeat any claim that he pleaded guilty unknowingly or involuntarily because of errant advice by counsel about career offender status under U.S.S.G. § 4B1.1, what approximate sentence he would get, and/or whether (without the Plea Agreement) the United States could use his prior convictions to raise his statutorily-mandated minimum sentence. In that regard, by signing his Plea Agreement, Petitioner committed to "enter a voluntary plea of guilty to object one of Count One and Count Five" (Docket Entry 33 at 2), acknowledged "as to object one of Count One . . . that he shall be sentenced to a term of imprisonment of not less than ten years or more than life," as well as that "for Count Five . . . he shall be sentenced to imprisonment for not less than five years[ and] that such term of imprisonment cannot run concurrently" (id.), verified his "understand[ing] that the sentence to be imposed upon him [wa]s within the discretion of the sentencing Court subject to th[ose] statutory maximum amd mandatory minimum penalties" (id. at 3), "knowingly waive[d] and g[a]ve[] up his constitutional rights to plead not guilty" (id. at 4), admitted that he "[wa]s going to plead guilty to object one of Count One and Count Five . . . because he [wa]s, in fact, guilty and not because of any threats or promises" (id.), "in exchange for the Government not filing an Information of Prior Conviction for his [prior drug] conviction[s] . . ., expressly waive[d] the right to appeal the

11

conviction and [his] sentence . . ., excepting [his] right to appeal based upon grounds of (1) ineffective assistance of counsel, (2) prosecutorial misconduct not known to [him] at the of [his] guilty plea, (3) a sentence in excess of the statutory maximum, and (4) a sentence based on an unconstitutional factor, such as race, religion, national origin or gender" (id. at 5-6), and stipulated that "[n]o agreements, representations, or understandings ha[d] been made between the parties in this case other than those which are explicitly set forth in th[e] Plea Agreement, and none w[ould] be entered into unless executed in writing and signed by all the parties" (id. at 7; see also id. at 1-7 (containing no agreement on career offender status or ultimate sentence)).

Subsequently, after taking an oath (see Docket Entry 53 at 4) and acknowledging that false answers "may later be used against [him] in a separate prosecution for perjury" (id.), Petitioner swore before Judge Osteen, inter alia, that Petitioner and his counsel "fully discussed the charges contained in the [I]ndictment and the case in general," as well as "any possible defenses [he] might have" (id. at 5-6), that he was "fully satisfied with [her] services" (id. at 6), that he signed his Plea Agreement (id.), that he "underst[oo]d all of [its] terms" (id. at 7), that his "[P]lea [A]greement represent[ed] the entire agreement between [him] and the United States" (id. at 7-8), that, "in determining a sentence, [the Court must] consider both the advisory guideline calculation

12

as well as the factors set forth under 18 USC Section 3553" (id. at 10), that, "in exchange for the Government not filing an enhancement to the . . . mandatory minimum sentence, [he] agree[d] to waive [his] right to appeal," except for "[i]neffective assistance of counsel," "prosecutorial misconduct not known to [him] at the time of [his] guilty plea," "a sentence in excess of the statutory maximum," and "a sentence based on an unconstitutional factor" (id. at 10-11), that no one "made any threats or promises to [him] other than those contained in the [P]lea [A]greement in an effort to get [him] to plead guilty" (id. at 12), that he faced a "mandatory minimum sentence of 10 years, and a maximum sentence of life . . . as to Count One –- Object One" (id. at 13-14), that, "with respect to Count Five, . . . penalties that apply by statute include . . . [a] mandatory minimum term of imprisonment of five years up to a maximum of life . . . [which] must be imposed to run consecutively to any other sentence" (id. at 14-15), that the Court "cannot determine the sentencing guidelines range applicable for [his] case until after a presentence report has been prepared" (id. at 16), that his "guideline range and [his] sentence may be different from any estimate [his counsel] may have provided to [him]" (id.), and that he was "pleading guilty because [he was], in fact, guilty" (id. at 21).

"A defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity, because courts

13

must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (internal brackets, citations, ellipses, and quotation marks omitted). "Thus, in the absence of extraordinary circumstances, . . . [the C]ourt should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict [such] sworn statements." Id. at 221–22. Petitioner has not identified any extraordinary circumstances (see Docket Entry 85, ¶ 12(Ground Two) & Exs. B, C; Docket Entry 96 at 6-8; Docket Entry 103 at 7-9) and therefore Ground Two (which rests on allegations contrary to his sworn affirmation of his Plea Agreement) cannot succeed.[4]

---

[4] In an attempt to save Ground Two, Petitioner's Reply cites United States v. Lewis, 477 F. App'x 79 (4th Cir. 2012), United States v. Grant, 446 F. App'x 473 (3d Cir. 2011), United States v. Russell, 221 F.3d 615 (4th Cir. 2000), and Strader v. Garrison, 611 F.2d 61 (4th Cir. 1979). (See Docket Entry 103 at 8.) Those three Fourth Circuit decisions involve issues unlike the ones raised here and thus they do not alter the conclusion that Lemaster bars relief. See Lewis, 477 F. App'x at 82-83 & nn.2 & 4 ("find[ing] that [defendant] was prejudiced by counsel's erroneous advice that [enhancement to mandatory life under] § 841 applied," declining to "address whether there was prejudice with respect to [counsel's advice about] career offender enhancement," and concluding that "nothing the district court said corrected the error [by counsel regarding statutory enhancement to life]"); Russell, 221 F.3d at 619-23 (concluding that counsel provided ineffective assistance by neglecting to verify validity of prior convictions used by United States to impeach defendant's trial testimony); Strader, 611 F.2d at 62-65 (granting habeas relief to state prisoner who relied on inaccurate advice by counsel, evidently not corrected during plea colloquy, about impact of plea on parole eligibility). The cited Third Circuit case did hold that a proper plea colloquy alone would not preclude collateral relief where counsel mistakenly advised the
(continued...)

14

## Ground Three

Ground Three of Petitioner's Section 2255 Motion seeks relief for "[d]eni[al of] [e]ffective [a]ssistance at [p]lea [n]egotiation and plea hearing making [his P]lea[ A]greement and plea waiver not knowingly [sic] and voluntary." (Docket Entry 85, ¶ 12(Ground

---

[4](...continued)
defendant that he would receive a sentence drastically lower than the career offender-based sentence he ultimately received, but that decision did not discuss whether the district court there expressly warned the defendant against relying on any sentence estimate by counsel (as Judge Osteen cautioned Petitioner). See Grant, 446 F. App'x at 475-76. Moreover, the defendant in Grant apparently possessed a strong case for trial, see id. at 476 & n.2, something Petitioner has not shown (see Docket Entry 85, ¶ 12(Ground Two)(a) & Exs. B, C; Docket Entry 96 at 6-8; Docket Entry 103 at 7-9). Nor does the evidence in Exhibits B and C to the Section 2255 Motion reveal extraordinary circumstances that could save Ground Two from rejection under Lemaster. Exhibit B consists of an affidavit from Petitioner's former girlfriend addressing the suppression motion filed in state court, as well as his report to her that his counsel "told him that [Washington] . . . had wrote [sic] statements against him" and that counsel "was going to go to the prosecutor and get th[e gun charge] thrown out." (Docket Entry 85, Ex. B.) Exhibit C contains an affidavit from Washington (along with a letter from Washington's counsel) and an affidavit from Petitioner. (See id., Ex. C). Washington's affidavit sets out denials that he used a Dodge Magnum to deliver drugs to a particular person and that he "wr[o]te a statement against [Petitioner]" (the latter of which denials the letter from Washington's counsel corroborates). (Id.) Petitioner's affidavit asserts that he twice asked his counsel to file in this Court the suppression motion she filed in state court, as well as that, "[d]uring plea negotiations[, she] told [him] that [he] was not a career offender, . . . that she was going to [the] prosecutor and get [sic] the 924c count thrown out, . . . [and that] Washington wrote statements against [him]." (Id.) None of that evidence undermines Petitioner's guilty plea, because the suppression motion could not have succeeded (as discussed in relation to Ground One) and because Ground Two does not allege (and the record, detailed above, does not reflect) that he pleaded guilty due to statements attributed to Washington, evidence that Washington delivered drugs to that person in a Dodge Magnum, or a belief that the United States would drop Count Five.

Three); see also Docket Entry 96 at 8 (framing Ground Three as ineffectiveness claim for counsel "not notifying [P]etitioner of Dorsey v. United States, [567 U.S. 260] (2012)[,] during plea negotiations or plea hearing making [his P]lea [A]greement and plea waiver not knowingly [sic] and voluntary" (bold font omitted)).) These "[s]upporting facts" accompany Ground Three:

> Counsel never advised [Petitioner] that Dorsey was pending in the Supreme Court and that Dorsey had a significant effect on [Petitioner's] [s]tatutory [m]andatory [m]inimum and [a]ppeal [w]aiver. Even at [Petitioner's] plea hearing the Judge put counsel on notice that this was a [p]re-Dorsey case. Counsel knew or should have known the effect Dorsey had on [Petitioner's] case and should have let [him] know that he would be waiving his rights with no benefits and [would be] sentenced under the wrong [s]tatutory [m]aximum and [m]inimum. Had [Petitioner] known that he would not have agreed to the term [sic] of the [P]lea [A]greement.

(Docket Entry 85, ¶ 12(Ground Three)(a) (internal citation omitted).)

The ineffective assistance claim in Ground Three lacks merit for reasons well-explained in the Response by the United States:

> [Petitioner] ignores the fact that he has received the benefit of Dorsey. Although at his original sentencing Petitioner was sentenced as a career offender based on the 10 years to life drug offense and the 924(c) firearms offense, [his counsel] appealed that sentence and the Government agreed to remand the case for resentencing in light of Dorsey.
>
> At his resentencing hearing, Petitioner received the post-Dorsey benefit of the Fair Sentencing Act [("FSA")] which resulted in a 5-year statutory mandatory minimum for the drug offense in Count One. Based on application of the career offender enhancement to the drug count and the § 924(c) firearm count, Judge Osteen noted that the

16

> guideline range was 262-327 months. After hearing extensive argument, Judge Osteen varied below the guideline range and sentenced Petitioner to 180 months on the drug conspiracy count with a consecutive 60 months' sentence on the 924(c) count. Thus, . . . Petitioner did, in fact, receive a resentencing consistent with Dorsey which retroactively applied the FSA to his pre-2010 criminal conduct.
>
> Petitioner's argument that he waived his rights "with no benefit" is likewise unsupported. Petitioner did receive the benefit of his bargain since no Information of Prior Conviction was filed against him. If an Information of Prior Conviction had been filed against him, even applying the FSA post-Dorsey, [his] statutory penalty would have been increased to 10 years to life for the drug conspiracy . . . and he would have faced 322-387 months' imprisonment on a guilty plea to the drug and 924(c) counts . . . . Had Petitioner gone to trial, even post-Dorsey he would have faced a sentence of 360 months' to life imprisonment as a career offender. Thus, Petitioner received the benefit of his bargain and he cannot establish that he was prejudiced by his attorney's failure to advise him regarding Dorsey: he ultimately received the benefit of the Dorsey decision at resentencing.

(Docket Entry 99 at 16-18 (internal citations omitted); see also Docket Entry 103 at 9 ("[T]he Government is right [that P]etitioner did receive some benefits of Dorsey.").)

### Johnson Motion

Petitioner filed his Johnson Motion to "preserv[e] his rights to file any future claims that may be beneficial to his litigation . . . ." (Docket Entry 98 at 2.) In Johnson, the United States Supreme Court "held that imposing an increased sentence under the residual clause of the [violent felony definition in the] Armed Career Criminal Act[, 18 U.S.C. § 924(e),] violates the Constitution's guarantee of due process." Johnson, 576 U.S. at

17

___, 135 S. Ct. at 2563; see also id. at 2555-56 ("Federal law forbids . . . convicted felons . . . to ship, possess, and receive firearms. In general, the law punishes violation of this ban by up to 10 years' imprisonment. But if the violator has three or more earlier convictions for a 'serious drug offense' or a 'violent felony,' [Section 924(e)] increases his prison term to a minimum of 15 years and a maximum of life. [Section 924(e)] defines 'violent felony' as follows: 'any crime punishable by imprisonment for a term exceeding one year that –- (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.' The closing words of this definition, italicized above, have come to be known as [Section 924(e)'s] residual clause." (internal ellipsis and citations omitted) (italics in original)). Because this Court (per then-Chief Judge Osteen) did not sentence Petitioner under Section 924(e) or based on a determination under any other statute or Sentencing Guidelines provision that either of his instant federal offenses or any of his prior convictions constituted a "violent felony" (or a "crime of violence") under any definition (let alone pursuant to a "residual clause" definition of the sort at issue in Johnson) (see Docket Entries 65, 72, 89-1), Petitioner's Johnson Motion fails as a matter of law.

18

CONCLUSION

Petitioner has not shown entitlement to collateral relief.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Section 2255 Motion (Docket Entry 85) and his <u>Johnson</u> Motion (Docket Entry 98) be denied without a certificate of appealability.

/s/ L. Patrick Auld<br>**L. Patrick Auld**<br>**United States Magistrate Judge**

December 6, 2018